Argued and submitted July 1, 2004, affirmed May 4, 2005

STATE OF OREGON,
*Respondent,*

*v.*

BLAINE RAY McMILLAN,
*Appellant.*

F04114, F04420; A112613 (Control), A112614
(Cases Consolidated)

111 P3d 1136

James N. Varner filed the brief for appellant.

Steven R. Powers, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals judgments of conviction in two criminal cases, which are consolidated for appeal. In the first case, defendant was convicted of theft in the first degree, ORS 164.055, forgery in the first degree, ORS 165.013, and forgery in the second degree, ORS 165.007. In the second case, defendant was convicted of racketeering, ORS 166.720, and theft in the first degree. The forgery charges in the first case formed predicate offenses for the racketeering charge in the second. All of the charges arose out of defendant's participation with his wife in a livestock operation that involved, among other things, entering into "feed and care" leases and then selling cattle without the owners' permission. After defendant was found guilty of the foregoing charges, the trial court found that defendant was responsible for the theft of 89 head of cattle and accordingly ordered defendant to pay, as part of his sentence, restitution in the amount of $85,969, based on the value of the cattle. The trial of all charges took place in Union County.

On appeal, defendant first argues that the trial court erred in denying his motion for a judgment of acquittal as to the forgery charges because there was no evidence that the checks had been "uttered" in Union County, where the trial occurred. Defendant offered evidence that the checks, in fact, had been deposited in Multnomah County, but the trial court sustained the state's objection to the evidence. Defendant argues that the trial court erred in making that evidentiary ruling as well. In *State v. McMillan (A113456)*, 199 Or App 408, 412-13, 111 P3d 1154 (2005), we rejected defendant's wife's identical arguments. We concluded that, even if the checks had been deposited in another county, ultimately they had been delivered to a bank in Union County. The checks thus had been uttered in Union County just as if they had been delivered there personally. *Id.* at 413. Our decision in *McMillan* disposes of both of defendant's arguments regarding the forgery convictions.

Defendant also argues that the trial court erred in requiring restitution as part of the sentence. According to defendant, the amount of restitution was based on the judge's

finding that defendant had stolen 89 head of cattle. That finding of fact, defendant argues, affected his sentence. As a result, he argues, under both the state and federal constitutions, the finding should have been made by a jury rather than the sentencing judge.

■ The state responds that defendant's state constitutional contention was rejected by the Supreme Court in *State v. Hart*, 299 Or 128, 699 P2d 1113 (1985). As for the federal constitutional contention, the state argues that federal courts uniformly have rejected the same argument, holding that statutes authorizing awards of restitution do not prescribe statutory maximums that may be exceeded only by jury findings. We agree with the state on both arguments.

In *Hart*, the defendant was convicted of assault in the second degree for injuries that he inflicted on his 18-month old son. Those injuries resulted in permanent disability that required continuing medical treatment. At sentencing, the defendant requested a jury trial on the issue of restitution, which the court denied. After hearing evidence of the incurred and future medical expenses of the child, the court ordered defendant to pay restitution in the amount of $224,462.80. *Hart*, 299 Or at 130-31.

The defendant appealed, arguing that the restitution order violated his right to a jury trial under Article I, section 11, of the Oregon Constitution. The Supreme Court disagreed, holding that the Oregon Constitution did not guarantee the defendant a jury trial on the issue of the amount of restitution. It reasoned that, while the seriousness of the injuries was an element of second-degree assault, the "monetary amount of the medical and other out-of-pocket expenses associated with the injury is not. * * * Therefore, while the amount of the restitution order might be termed an element of sentencing, it is not an element of the crime of assault." *Hart*, 299 Or at 136-37.

We see no difference for these purposes between the assault statute at issue in *Hart* and the theft statute at issue in this case. The amount of restitution is not an element of the crime of theft in the first degree. Although it is true that, in certain cases, in order to convict a defendant of theft in the

first degree, a jury must find that the defendant had committed a theft of more than a particular sum of money, ORS 164.055(1)(a), that element is nothing more than a finding regarding the seriousness of the victim's injury.

In this case, the state charged defendant with the theft of cattle valued at more than $1,000. Thus, while the seriousness of the injury is an element that the state had to prove to the jury beyond a reasonable doubt, under *Hart*, the precise "monetary amount of * * * the injury is not." The jury found defendant guilty of the theft of cattle valued at more than $1,000. That was sufficient to permit the court to order defendant to pay restitution. ORS 137.106. Under *Hart*, defendant is not also entitled to a jury trial regarding the amount of that restitution.

■ ■  We turn to defendant's federal constitutional argument. In *Apprendi v. New Jersey*, 530 US 466, 490, 120 S Ct 2348, 147 L Ed 2d 435 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Four years later, in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), the Court illuminated what it meant when it referred to a "prescribed statutory maximum" sentence. It is, the Court explained, the

> "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* * * * In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum [the judge] may impose *without* any additional findings."

*Id.* at 2537, 124 S Ct at 2537 (emphasis in original; citations omitted).

ORS 137.106(1) provides that, "[w]hen a person is convicted of a crime * * * that has resulted in pecuniary damages," the district attorney must investigate and present to the court evidence as to the nature and amount of those damages. The statute then provides that, "[i]f the court finds from the evidence presented that a victim suffered pecuniary damages, in addition to any other sanction it may impose, the

court shall," among other things, "[i]nclude in the judgment a requirement that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's pecuniary damages as determined by the court." ORS 137.106(1)(a).

The statute thus does not permit any finding of the court to result in a sentence beyond the statutory maximum. Rather, the statute authorizes the court to require the payment of restitution as part of the judgment of conviction in an amount "that equals the full amount of the victim's pecuniary damages as determined by the court." ORS 137.106(1)(a). The statutory maximum is, in other words, the amount of pecuniary damages as determined by the court, and no more. Therefore, even assuming that *Apprendi* and *Blakely* apply to restitution, *see State v. Gutierrez*, 197 Or App 496, 505, 106 P3d 670 (2005) (*Apprendi* and *Blakely* "arguably do not apply" to restitution), the principles announced in those cases were not violated.

We note that the federal courts appear uniformly to have arrived at the same conclusion under analogous circumstances. The federal Mandatory Victims Restitution Act, similarly to ORS 137.106, authorizes federal trial courts to determine the amount of restitution and requires that they reflect the full amount of a victim's injury. 18 USC § 3663A. In a number of cases, defendants have objected to the imposition of restitution without jury findings as to the amount. The federal appellate courts have concluded that, as long as the amount of restitution does not exceed the full amount of the victim's injury, *Apprendi* is not violated. *E.g., U.S. v. Wooten*, 377 F3d 1134, 1144 (10th Cir), *cert den,* ___ US ___ , 125 S Ct 510 (2004) (restitution that does not exceed value of victim's injury does not violate the rule of *Apprendi*); *U.S. v. Ross*, 279 F3d 600, 609-10 (8th Cir 2002) (even if applicable, *Apprendi* not violated because restitution in full amount of victim's losses does not exceed "statutory maximum"); *see also U.S. v. Syme*, 276 F3d 131, 158-59 (3rd Cir), *cert den,* 537 US 1050 (2002) (*Apprendi* inapplicable to federal restitution statute because no "statutory maximum" prescribed).

Affirmed.